UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRISCILLA McMANUS,<br><br>    Plaintiff,<br><br>    v.<br><br>NBS DEFAULT SERVICES, LLC, et al.<br><br>    Defendants. | No. 2:18-cv-02047 JAM AC PS<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this action pro se and the case was accordingly referred to the undersigned by Local Rule 302(c)(21). Pending before the court are two motions for summary judgment: one from defendant Bank of America (ECF No. 108) and one from defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Nationstar Mortgage, LLC (ECF No. 110). The only other defendant in this case, NBS Default Services, LLC, has not made a motion but is similarly situated to the moving defendants. Plaintiff filed an opposition to each motion. ECF Nos. 113, 114. Defendants replied. ECF Nos. 115, 116. For the reasons explained below, defendants' motions should be GRANTED, and this case should be CLOSED.

      **I.**    **Complaint and Procedural Background**

    A.    Procedural History

Plaintiff Priscilla McManus initiated this wrongful foreclosure action in pro se on June 20, 2018, by filing a complaint against defendants in the County of El Dorado Superior Court. ECF

1

No. 1-1 at 14-30. Defendants removed the case to district court based on subject matter and diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441. ECF No. 1. On August 2, 2018, defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), and Nationstar Mortgage filed a motion to dismiss. ECF No. 8. The court granted the motion in part, but denied it as to plaintiff's claims for (1) breach of implied covenant of good faith and fair dealing, (2) violation of California business and professions code § 17200 et seq.; (3) quiet title; and (4) wrongful foreclosure. ECF No. 28 at 2. The court granted the motion to dismiss but granted leave to amend on plaintiff's claims of (5) fraud; and (6) void or cancel assignments of deed of trust. Id. Defendants' motion was granted without leave to amend on several other claims. Id.

On January 11, 2019, plaintiff filed a First Amended Complaint ("FAC")[1] stating the six claims which had been permitted to move forward. ECF No. 31 at 1. Two of those claims, "fraud" and "void or cancel assignments of deed of trust" were later dismissed without further leave to amend. ECF Nos. 44, 45.

   B.  Allegations of the FAC

On April 26, 2004, plaintiff financed the loan on the "Subject Property" through Fidelity Home Mortgage Corp. and executed a promissory note ("the Note") in favor of Fidelity. The Note was secured by a deed of trust ("DOT") with MERS as the beneficiary. ECF No. 31 at 2. Plaintiff alleges that shortly after financing, Fidelity sold its interest in the note to Fannie Mae and attempted to sell its property security interest in plaintiff's DOT. Id. On March 14, 2011, a Loan Modification Agreement was signed by plaintiff stating that BAC Home Loan Servicing LP was the lender. Id.

On March 14, 2012, MERS sold BAC Home Loan Servicing all beneficial interest under the deed of trust and filed the notice with the El Dorado County Recorder's Office on March 29, 2012. Id. An Assignment of Deed of Trust dated June 20, 2013 is attached to the complaint, showing the DOT conveyed onto Nationstar Mortgage, LLC. Id. at 137, FAC Ex. F. An assignment of DOT was signed on November 23, 2015 in which Nationstar Mortgage LLC

---

[1] This document is labeled incorrectly on the docket as a Second Amended Complaint.

conveyed onto the Federal National Mortgage Association ("Fannie Mae") the beneficial interest under the DOT.  FAC Ex. G.  The assignment was recorded on December 22, 2015.  Id.  Plaintiff attaches another Assignment of the DOT, signed December 7, 2015, in which Nationstar Mortgage again assigned it interest in the DOT to Fannie Mae; this Assignment was recorded on February 10, 2016.  FAC Ex. H.  Plaintiff alleges that no Substitutions of Trustee have been executed or filed in the public record with respect to the subject property, and the current trustee remains Fannie Mae.  ECF No. 31 at 3.

On December 17, 2014, a Notice of Default on the subject property was recorded listing contact information for Nationstar and NBS Default Services.  FAC Ex. I.  In early June 2017 plaintiff received a Notice of Trustee's Sale in the mail from NBS Default Service, LLC, as the purported duly appointed trustee.  Id. at 17.  A copy of a Notice of Trustee's Sale dated June 30, 2017, listing contact information for NBS Default Services, is attached to the complaint.  FAC Ex. J.  On April 19, 2018 the subject property was sold to Fannie Mae pursuant to purported Assignments recorded by Nationstar Mortgage.  FAC Ex. L.  The same day, at 9:24 a.m. and prior to the scheduled sale of the Subject Property, plaintiff filed for Chapter 13 Bankruptcy.  FAC Ex. K.  Plaintiff is informed and believes that there has never been any substation of trustee with respect to the DOT, none of the foreclosing defendants are the holder of the Note, and none of the foreclosing defendants were ever entitled to enforce the Note.  ECF No. 31 at 4.  Plaintiff is informed and believes that defendants never knew who the actual beneficiary of the DOT was, and the actual beneficiary of the DOT never provided a declaration to NBS Default Services, LLC stating that plaintiff was in default, and thus the non-judicial foreclosure of the subject property was invalid.  Id.

**II.   Standard for Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

1  truth at trial.'" T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v.

2  Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to

3  pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

4  trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

5      "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

6  court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

7  v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is

8  the opposing party's obligation to produce a factual predicate from which the inference may be

9  drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

10 demonstrate a genuine issue, the opposing party "must do more than simply show that there is

11 some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

12 omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

13 non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

14 U.S. at 289).

### III. Statement of Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence. Defendant Bank of America's statement of undisputed facts is located at ECF No. 108-5, and is supported by the declarations of Bank of America Vice President Ryan Dansby (ECF No. 108-1) and attorney Joel C. Spann (ECF No. 108-3), along with records including the Multistate Fixed Rate Note for the property at 1600 Starbuck Road, Rescue, CA (ECF No. 108-2 at Ex. 1), the Deed of Trust for the same property (id. at Ex. 2), servicing communications from Bank of America (id. at Ex. 3), a notice of servicing transfer from Bank of America to Nationstar Mortgage LLC effective April 1, 2013 (id. at Ex. 4), home loan balance sheets (id. at Ex. 5), and deposition testimony with exhibits (ECF No. 108-4). Bank of America filed a separate request for judicial notice containing several public records. ECF No. 109.[2]

---

[2] The court takes judicial notice of the documents submitted in Bank of America's request because the documents include publicly recorded documents. "A court shall take judicial notice if

1  Defendants MERS and Nationstar submitted a separate statement of undisputed facts located at
2  ECF No. 110-1.  This statement is supported by the declaration of Justin D. Balser (ECF No. 110-
3  2), deposition testimony with exhibits (ECF No. 110-3 through 110-5), copies of the plaintiff's
4  bankruptcy petitions filed in the United States District Court for the Eastern District of California
5  on August 7, 2017 and December 18, 2017 (ECF No. 110-6), and copies of the dockets from
6  plaintiff's bankruptcy actions (ECF No. 110-7).  Plaintiff did not submit separate statements of
7  undisputed facts, though she includes "disputes of material fact" in her opposition briefing.  ECF
8  Nos. 113 at 2-4, 114 at 2-6.

On or about April 26, 2004, plaintiff Priscilla McManus obtained a loan in the amount of $333,700.00 from Fidelity Home Mortgage Corp.  Declaration of Bank of America ("BANA Dec."), ¶ 2, Ex. 1 (Promissory Note); Declaration of Joel C. Spann ("JCS Dec."), ¶ 4(h), Ex. 2 (Promissory Note); First Amended Complaint ("FAC"), ¶ 2.  The loan was secured by a Deed of Trust recorded on real property located at 1600 Starbuck Road, Rescue, California 95672, which named MERS as the "nominee for Lender and Lender's successors and assigns" and beneficiary under the Deed of Trust.  BANA Dec., ¶ 3, Ex. 2 (Deed of Trust); Request for Judicial Notice ("RJN"), Ex. 1 (Deed of Trust); FAC, ¶ 2.  BAC CHL Countrywide Home Loans was the investor of the Loan from May 19, 2004 through May 24, 2004, at which point the Federal National Mortgage Association ("Fannie Mae") became the investor.  BANA Dec., ¶ 4.  BAC Home Loans Servicing, LP serviced the Loan from May 19, 2004 through June 30, 2011, at which point servicing of the Loan was transferred to Bank of America, N.A; this was a transfer from a subsidiary to a parent company.  BANA Dec., ¶ 4, Ex. 3 (Service Change Letter).

On March 29, 2012 an Assignment of Deed of Trust was recorded, stating that MERS' interest under the Deed of Trust had been transferred to Bank of America, N.A., successor by merger to BAC Home Loans Servicing.  RJN, Ex. 2 (Assignment of Deed of Trust); FAC, ¶ 5.

---

requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  The existence and contents of these publicly recorded documents can be accurately and readily determined, and judicial notice is appropriate.

On March 9, 2013, Bank of America sent plaintiff a notice that, as of April 1, 2013, servicing of the Loan would be transferred to Nationstar Mortgage LLC.  BANA Dec., ¶ 5, Ex. 4 (Service Change Letter), Nationstar Affidavit ¶¶ 8-10.  As of the date that servicing of the Loan transferred to Nationstar Mortgage LLC, plaintiff was current on the payments on the Loan.  BANA Dec., ¶ 6, Ex. 5 (Loan Payment History).  On June 20, 2013 an Assignment of Deed of Trust was recorded, stating that Bank of America, N.A.'s interest under the Deed of Trust had been transferred to Nationstar Mortgage, LLC.  RJN, Ex. 3 (Assignment of Deed of Trust); FAC, ¶ 6.  A Substitution of Trustee was recorded on December 15, 2014, stating that the trustee under the Deed of Trust had been changed to NBS Default Services LLC ("NBS").  RJN, Ex. 4 (Substitution of Trustee).

On December 17, 2014, NBS recorded a Notice of Default on the property.  RJN, Ex. 5 (Notice of Default); FAC, ¶ 10.  On December 22, 2015, a Corporate Assignment of Deed of Trust was recorded, stating that Nationstar Mortgage LLC's interest under the Deed of Trust had been transferred to Fannie Mae.  RJN, Ex. 6 (Corporate Assignment of Deed of Trust); FAC, ¶ 7.  On June 30, 2017, NBS recorded a Notice of Trustee's Sale on the property. RJN, Ex. 7 (Notice of Trustee's Sale); FAC, ¶ 11.  Plaintiff received the foreclosure notices from NBS.  JCS Dec., ¶ 4(s); FAC, ¶ 11.

Plaintiff filed Chapter 13 bankruptcy petitions on August 7, 2017, and December 18, 2017.  Declaration of Justin D. Balser (Balser Dec.) at Ex. B.  Plaintiff listed the property value as $325,000.00 in her Chapter 13 bankruptcy schedules.  Balser Dec. Ex. A at 53:9-54:14 and deposition Ex. 9.  The bankruptcy court dismissed both bankruptcy actions.  Balser Dec. Ex. C.  Plaintiff filed another Chapter 13 bankruptcy petition on April 19, 2018 in an attempt to stop the sale of the property, but when she arrived to file the clerk told her the property was "already transferred."  Balser Dec. Ex. A at 159:4-19, 160:7-22 and Ex. 15.  On April 25, 2018, a Trustee's Deed of Sale was recorded on the property stating that NBS, as trustee, conveyed the property to Fannie Mae, which was also identified as the foreclosing beneficiary.  RJN Ex. 8 (Trustee's Deed Upon Sale); FAC, ¶ 13.  NBS was the entity that sold the property at the sale.  JCS Dec., ¶ 4(f); FAC, ¶ 13.  Fannie Mae purchased the property at the sale for the full debt amount: $380,847.89.

RJN Ex. 8, Nationstar Aff. ¶ 17, Ex. J.  At the time of the sale, the loan was not paid off.  JCS Dec., ¶ 4(e).  At the time of the sale, plaintiff was in default.  JCS Dec., ¶ 4(v).

### IV.    Analysis

Plaintiff's remaining claims are: (1) breach of the implied covenant of good faith and fair dealing; (2) violation of California business and professions code section 17200 et. seq.; (3) quiet title; and (4) wrongful foreclosure.  FAC at 4-14, ECF No. 45.  The theory underlying each of plaintiff's causes of action is that there is a broken chain of title on the subject property that resulted in an improper sale.  Specifically, the FAC alleges plaintiff's belief that there has never been any substation of trustee with respect to the DOT, none of the foreclosing defendants are the holder of the Note, and none of the foreclosing defendants were ever entitled to enforce the Note.  FAC at 4.  Plaintiff further believes that defendants never knew who the actual beneficiary of the DOT was, and the actual beneficiary of the DOT never provided a declaration to NBS Default Services, LLC stating that plaintiff was in default, and thus the non-judicial foreclosure of the subject property was invalid.  Id.

Each of these claims was addressed on the first motion to dismiss this case.  ECF No. 22.  The undersigned declined to recommend dismissal at the pleading stage because plaintiff had attached documents, of which the court took judicial notice, which appeared to indicate that Nationstar was not the beneficiary under the DOT at the time the foreclosure sale took place, and it was unclear whether NBS was attempting to foreclose as trustee on behalf of Nationstar.  ECF No. 1-1 at 139 (Corporate Assignment of Deed of Trust dated December 22, 2016 transferring interest in DOT from Nationstar Mortgage to Fannie Mae), 141 (Corporate Assignment of Deed of Trust dated February 10, 2016 transferring interest in DOT from Nationstar Mortgage to Fannie Mae).  The court concluded that "only the actual beneficiary would be able to initiate foreclosure proceedings [and insofar as] NBS Default acted on behalf of Nationstar to sell the subject property it acted without authority because the beneficial interest in the DOT had already been assigned to Fannie Mae."  ECF No. 22 at 11-12, citing ECF No. 1-1 at ¶ 39.  The undersigned repeated that "the complaint's allegations and attachments cast doubt on defendant Nationstar's right to foreclose on the subject property, because it is unclear whether it was the

beneficiary under the DOT at the time its agent, NBS Default Services, completed the foreclosure sale." Id. at 13, citing ECF No. 1-1 at 139, 141. Each of plaintiff's remaining claims rest on this theory of broken title, which defendants were unable to properly dispute at the motion to dismiss phase.

It is now clear from undisputed facts presented in the Rule 56 context that the foreclosing beneficiary was properly authorized, that Fannie Mae was in fact the foreclosing beneficiary with the authority to foreclose, and that the chain of title was unbroken. A Substitution of Trustee was recorded on December 15, 2014, stating that the trustee under the Deed of Trust had been changed to NBS. RJN, Ex. 4 (Substitution of Trustee). This evidence belies plaintiff's claim that the foreclosing trustee was not properly substituted in. NBS continued to act as trustee even as the beneficial interest in the property was assigned from Nationstar Mortgage to Fannie Mae in 2015. RJN, Ex. 6 (Corporate Assignment of Deed of Trust); FAC, ¶ 7. The Trustee's Deed Upon Sale recognizes that Fannie Mae is both the Foreclosing Beneficiary and the Grantee, with NBS acting as the Trustee. ECF No. 110-8 at 81. The undisputed facts demonstrate that defendants are entitled to summary judgment on each of the remaining claims, and that this case should be closed.

(1) Wrongful Foreclosure

"A beneficiary or trustee under a deed of trust who conducts an illegal, fraudulent or willfully oppressive sale of property may be liable to the borrower for wrongful foreclosure; a foreclosure initiated by one with no authority to do so is wrongful for purposes of such an action." Yvanova v. New Century Mort. Corp., 62 Cal. 4th 919, 929 (2016). The basic elements of wrongful foreclosure are: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." Miles v. Deutsche Bank Nat'l Tr. Co., 236 Cal. App. 4th 394, 408 (2015). A wrongful foreclosure suit may also be brought under the allegation that foreclosure was conducted by one who had no legal right to do so. Sciarratta v. U.S. Bank

Nat'l Ass'n, 247 Cal. App. 4th 552, 566 (2016). Those who possess a legal right are the trustee, mortgagee, beneficiary, or any of their authorized agents. Cal. Civ. Code § 2924(a)(1). The trustee under a trust deed "may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by: (A) all of the beneficiaries under the trust deed." Cal. Civ. Code. § 2934a(a)(1). A trustee of a deed of trust acts at the direction of the lender-beneficiary. Yvanova, 62 Cal. 4th at 927. As a result, the trustee may formally initiate nonjudicial foreclosure only at the direction of the person that currently holds the note and beneficial interest under the DOT. Id.

As discussed above and as demonstrated in the Statement of Undisputed Facts, NBS was properly substituted in as the Trustee, and NBS foreclosed on Fannie Mae's behalf as the duly appointed substitute trustee. Fannie Mae was authorized to foreclose as the lender and deed of trust beneficiary. The undisputed facts thus demonstrate that there was, in fact, no wrongful foreclosure in this case. The moving defendants are entitled to summary judgment.

(2) Breach of the Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation. Racine & Laramie, Ltd. v. Department of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (1992). The scope of conduct prohibited is circumscribed by the purposes and express terms of the contract. Ellis v. Chevron, U.S.A. Inc., 201 Cal. App. 3d 132, 139 (1988). "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." Carma Developers (Cal.), Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 372-73 (1992); see also Cal. Civ. Jury Instructions no. 325 (2017) (establishing a five-part test).

Here, plaintiff claims the Note and DOT were not properly assigned and that defendants acted in bad faith by foreclosing the subject property without having the proper rights under the DOT. The undisputed facts demonstrate that this is not the case. Because plaintiff cannot demonstrate that defendants broke any contract or acted improperly, the moving defendants are entitled to summary judgment on this claim.

////

(3) <u>Violation of California Business and Professions Code §§ 17200 et. seq. (California's Unfair Competition Law)</u>

Proposition 64 restricts standing to assert a cause of action under California's Unfair Competition Law. <u>Trujillo v. First American Registry, Inc.</u>, 157 Cal. App. 4th 628, 639 (2007). In order to bring a claim under UCL, a plaintiff must establish: (1) a loss or deprivation of money or property sufficient to qualify as injury in fact, that is, economic injury, and (2) that the economic injury was the result of, that is, caused by, the unfair business practice or false advertising that is the gravamen of the claim. <u>Obesity Research Institute, LLC v. Fiber Research International, LLC</u>, 165 F. Supp. 3d 937, 947 (S.D. Cal. 2016); Cal. Bus. & Prof. Code §§ 17204, 17535. Because the undisputed facts demonstrate that there was no unfair business practice or false advertising here that caused plaintiff injury, the moving defendants are entitled to summary judgment.

(4) <u>Quiet Title</u>

Because the undisputed facts demonstrate that the property at issue was properly sold to Fannie Mae at Trustee's Sale, the court cannot quiet title in plaintiff's favor. The moving defendants are entitled to judgment on this cause of action.

**V.     Remaining Defendant**

The court notes that defendant NBS Default Services is the only defendant that did not participate in any of the motions for summary judgment. Although NBS did not join in the summary judgment motions, summary judgment should be granted in its favor because it is similarly situated to the moving defendants vis-a-vis plaintiff's claims.

It is well established that a court may grant summary judgment sua sponte in favor of a non-moving party so long as the party that had moved for summary judgment had reasonable notice that the court might do so and so long as the party against whom summary judgment was rendered had "a full and fair opportunity to ventilate the issues involved in the motion." <u>Cool Fuel, Inc. v. Connett</u>, 685 F.2d 309, 312 (9th Cir. 1982); see also <u>Columbia Steel Fabricators v. Ahlstrom Recovery</u>, 44 F.3d 800, 802-803 (9th Cir. 1995); <u>Abagninin v. AMVAC Chemical Corp.</u>, 545 F.3d 733, 742 (9th Cir. 2008). Here, the interests of the moving and non-moving

defendants are entirely aligned, and plaintiff has had a full and fair opportunity to ventilate all the issues. It has been clear throughout that the grounds for judgment forwarded by the moving defendants applied equally to NBS, and the undisputed facts demonstrate that plaintiff cannot maintain any claim for relief against any defendant including NBS.

Accordingly, summary judgment should be granted in favor of NBS as well as the moving defendants, and this case should be closed.

## VI.  Conclusion

Accordingly, for the reasons explained above, IT IS RECOMMENDED that defendants' motions for summary judgment (ECF Nos. 108 and 110) be GRANTED, that judgment be entered in favor of all defendants, and that this case be CLOSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: April 16, 2021

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE